# IN THE UNITED STATES DISTRICT COURT

# FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TAMARA L. BOS,<br><br>    Plaintiff,<br><br>  v.<br><br>TAMMY GRISSOM, et. al.,<br><br>    Defendants. | No. 2:18-CV-2976-JAM-DMC<br><br><br><br>FINDINGS AND RECOMMENDATIONS |

Plaintiff, who is proceeding pro se, brings this civil action alleging violation of the Fair Debt Collection Practices Act. All Defendants have been served. Pending before the court is Defendants' motion to dismiss (ECF No. 11).

///
///
///
///
///
///
///
///
///

1

## I. PLAINTIFF'S ALLEGATIONS

Plaintiff names the following Defendants: (1) Tammy Grissom;[1] (2) United States Department of the Treasury Offset; (3) Sonja Hubbard; (4) Carla Donaldson; (5) Christie Lewis (Lovell); and (6) United States Small Business Administration ("SBA"). Plaintiff alleges Defendants violated the Fair Debt Collection Practices Act ("FDCPA") in their attempt to collect a debt related to a $5,000 SBA micro-loan. Plaintiff's claim is based on a series of actions by the Defendants and conversations between her and the Defendants. Plaintiff claims Defendants violated the FDCPA by engaging in unpleasant conversations with her, resulting in emotional and physical distress. Specifically, Plaintiff asserts Defendants violated the FDCPA by imposing a $50 offset to her monthly Social Security benefit check to pay for her delinquent SBA micro-loan. Initially, the offset was 15% of Plaintiff's monthly Social Security benefit check, which amounted to $202.20 deducted in March 2014. By April 2014, the offset was reduced to $50 monthly to accommodate Plaintiff's financial hardship. Plaintiff alleges, generally, Defendants garnishment of the initial $202.20 "caused Plaintiff to suffer anxiety attacks, nausea, and nightmare, where she was hysterical," and "these same illnesses, pain and distress, Plaintiff continually endures today." Plaintiff also contends the Defendants, generally, committed "elder financial abuse" by intentionally waiting until she turned sixty-five so that her Social Security Disability Insurance ("SSDI") switched to Social Security "standard retirement," in which garnishment is legally available.

Plaintiff's allegations against each named defendants are summarized below.

Tammy Grissom – Plaintiff states Defendant Grissom, who is Robert Hairston's[2] supervisor at the U.S. Department of the Treasury, faxed Plaintiff's "most personal, and private, papers" to Defendant Christie Lewis (Lovell), despite Robert Hairston guaranteeing Plaintiff he would be the only one to view them. Plaintiff alleges this shows Defendant Grissom and

---

[1] "Tammy Grissom" is listed in the caption of the complaint, but is referred to as "Tammy Griggs" throughout the body of the complaint.

[2] Robert Hairston is an employee of the U.S. Department of the Treasury Offset and a subordinate to Defendant Tammy Grissom. ECF No. 1, at 5. Plaintiff claims she had been in contact with Robert Hairston since January 15, 2014, regarding the debt collection, her financial hardship, and sending him the "private" and "personal" paperwork. Id.

Defendant Lewis both "blatantly violated debt collection laws" because their actions amount to the "'non-routine use' of Plaintiff's most private and personal papers."

Additionally, Plaintiff alleges Defendant Grissom lied by telling Plaintiff the Treasury does not have financial hardship waivers. Plaintiff states this lie caused her to "suffer emotionally which affected her physical being" and that the lie "violates debt collection laws" related to "Plaintiff's privacy." Plaintiff further alleges Defendant Grissom, with "her voice sinister and foreboding," told Plaintiff to cease contact with Robert Hairston. Plaintiff states this is a violation of debt collection laws because "you cannot harass or threaten the person you are trying to collect a debt from."

Lastly, Plaintiff alleges in a "bullying" voice, that victimized Plaintiff, Defendant Grissom "blatantly violated debt collection laws" by telling Plaintiff despite her inability to pay, she will pay anyway.

<u>Christie Lewis (Lovell)</u> – Plaintiff alleges Defendant Lewis received Plaintiff's "most personal, and private, papers," meant only for Robert Hairston, in a fax from Defendant Grissom, which violates "debt collection laws," because their actions amount to the "'non-routine use' of Plaintiff's most private and personal papers." Plaintiff also alleges Defendant Lewis stated, during a phone conversation, she would send Plaintiff paperwork to fill out and return, but Plaintiff never received the papers.

Next, Plaintiff alleges Defendant Lewis stated she had no knowledge of Plaintiff's "Administrative Resolution Approval." Plaintiff alleges records contradict that statement and thus, Defendant Lewis violated debt collection laws.

Further, Plaintiff contends Defendant Lewis violated the FDCPA when she informed Plaintiff that Edward Kelm[3] misspoke in stating Plaintiff's "Administrative Resolution Approval" was granted. Plaintiff states that Defendant Lewis changed Edward Kelm's testimony, which is witness tampering.

---

[3] Plaintiff claims Edward Kelm is a manager at ConServe, a private debt collection agency. Plaintiff's loan was allegedly transferred to ConServe as a third-party collection agency, but Plaintiff states Edward Kelm informed her on March 3, 2014, "the U.S. Department of the Treasury Offset had taken back [Plaintiff's] account." ECF No. 1, at 10.

Lastly, Plaintiff alleges Defendant Lewis lied to her by stating her agency does not offer financial hardship waivers. Plaintiff states the alleged lie caused her to "suffer emotionally which affected her physical being" and "violates debt collection laws of plaintiff's privacy."

<u>Sonja Hubbard</u> – Plaintiff alleges in a phone call, Defendant Hubbard "vocalized vicious, cruel, comments to Plaintiff" when Hubbard stated, "[my] [] Father was a veteran, and he pays his bills." Plaintiff asserts Defendant Hubbard's comment was "vile, repulsive, despicable," "glaringly offensive," and a "direct violation of debt collection laws, where debt collectors may not shame, harass, or threaten a person."

In Plaintiff's Opposition to Defendant's Motion to Dismiss, Plaintiff states she "had two Veterans, both deceased, in her family, who served the United States of America with honor, and distinction, one Plaintiff's brother, and second, Plaintiff's Uncle," but does not contend Defendant Hubbard knew this or that Defendant Hubbard made any direct statement regarding Plaintiff's deceased veteran relatives. ECF No. 15, at 5. There is no indication Defendant Hubbard made the comment with malicious intent. Further, these factual allegations appear nowhere in the complaint.

<u>Carla Donaldson</u> – Plaintiff alleges in a phone call that Defendant Donaldson "shocked" Plaintiff by telling her to send Defendant Donaldson the same private papers, discussed above, that were originally only sent to Robert Hairston. Plaintiff alleges Defendant Donaldson "verbally bullied" her into emailing those private papers.

Further, Plaintiff alleges Defendant Donaldson "verbally browbeat Plaintiff into submitting a second request for a financial hardship waiver." Plaintiff also alleges Defendant Donaldson "continued her verbal bludgeoning" when she told Plaintiff the "Administrative Resolution Approval" was nonexistent. Plaintiff states this constituted emotional abuse, which indirectly lead to physical harm to Plaintiff. Plaintiff states Defendant Donaldson's "lying, deceiving, harassment of Plaintiff" caused anxiety, stress, and violated debt collection laws.

///

///

Lastly, Plaintiff alleges Defendant Donaldson "continued her injurious statements" by saying she would decide what Plaintiff could afford in monthly payments on the delinquent loan. Plaintiff contends that statement constitutes unconscionable debt collection violations and "elder financial abuse."

<u>U.S. Small Business Administration ("SBA")</u> – Plaintiff alleges she received a text message from the SBA that was a "solicitation of business loan funds." Plaintiff stated she considers the text message harassment and it "caused her substantial psychological harm, bringing Plaintiff to tears."

In Plaintiff's Response to Defendant's Reply to Plaintiff's Opposition, Plaintiff asserts the text message from the SBA she received on January 15, 2018, stated, "Progressive Funds: SBA Dept. Still has your 250k Unsecured Business Line of Credit read. Call 888-479-2838 or visit pbfSBA.com or Reply Stop to Cancel." ECF No. 17, at 4. In Plaintiff's Opposition to Defendant's Motion to Dismiss, Plaintiff specifically argues Defendant SBA is liable for "employees violating Plaintiff's debt collection rights, which Plaintiff suffers from currently today." ECF No. 15, at 7. These factual allegations are not present in the complaint.

<u>U.S. Department of the Treasury Offset</u> – Plaintiff does not allege any facts in the complaint specifically identifying any acts by the U.S. Department of the Treasury Offset that violated the FDCPA. However, in Plaintiff's Opposition to Defendant's Motion to Dismiss, Plaintiff specifically argues Defendant U.S. Department of the Treasury Offset is liable for allowing "Plaintiff to be harassed, a clear violation of debt collection laws." ECF No. 15, at 7. Additionally, Plaintiff specifically asserts in her Opposition that Defendant U.S. Department of the Treasury Offset "allowed their employee, Defendant Grissom to threaten Plaintiff," when she stated "'do not contact' [] Robert Hairston," Plaintiff's alleged witness. <u>Id.</u>

Aside from these specific claims referencing specific Defendants, Plaintiff refers generally to "all defendants" and "defendants" throughout the complaint.

///

///

///

## II. STANDARD FOR MOTION TO DISMISS

In considering a motion to dismiss, the court must accept all allegations of material fact in the complaint as true. See Erickson v. Pardus, 551 U.S. 89, 93-94 (2007). The court must also construe the alleged facts in the light most favorable to the plaintiff. See Scheuer v. Rhodes, 416 U.S. 232, 236 (1974); see also Hosp. Bldg. Co. v. Rex Hosp. Trustees, 425 U.S. 738, 740 (1976); Barnett v. Centoni, 31 F.3d 813, 816 (9th Cir. 1994) (per curiam). All ambiguities or doubts must also be resolved in the plaintiff's favor. See Jenkins v. McKeithen, 395 U.S. 411, 421 (1969). However, legally conclusory statements, not supported by actual factual allegations, need not be accepted. See Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949-50 (2009). In addition, pro se pleadings are held to a less stringent standard than those drafted by lawyers. See Haines v. Kerner, 404 U.S. 519, 520 (1972).

Federal Rule of Civil Procedure 8(a)(2) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief" in order to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." Bell Atl. Corp v. Twombly, 550 U.S. 544, 555 (2007) (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957)). However, in order to survive dismissal for failure to state a claim under Rule 12(b)(6), a complaint must contain more than "a formulaic recitation of the elements of a cause of action;" it must contain factual allegations sufficient "to raise a right to relief above the speculative level." Id. at 555-56. The complaint must contain "enough facts to state a claim to relief that is plausible on its face." Id. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 129 S. Ct. at 1949. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." Id. (quoting Twombly, 550 U.S. at 556). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility for entitlement to relief." Id. (quoting Twombly, 550 U.S. at 557).

///
///

In deciding a Rule 12(b)(6) motion, the court generally may not consider materials outside the complaint and pleadings. See Cooper v. Pickett, 137 F.3d 616, 622 (9th Cir. 1998); Branch v. Tunnell, 14 F.3d 449, 453 (9th Cir. 1994). The court may, however, consider: (1) documents whose contents are alleged in or attached to the complaint and whose authenticity no party questions, see Branch, 14 F.3d at 454; (2) documents whose authenticity is not in question, and upon which the complaint necessarily relies, but which are not attached to the complaint, see Lee v. City of Los Angeles, 250 F.3d 668, 688 (9th Cir. 2001); and (3) documents and materials of which the court may take judicial notice, see Barron v. Reich, 13 F.3d 1370, 1377 (9th Cir. 1994).

Finally, leave to amend must be granted "[u]nless it is absolutely clear that no amendment can cure the defects." Lucas v. Dep't of Corr., 66 F.3d 245, 248 (9th Cir. 1995) (per curiam); see also Lopez v. Smith, 203 F.3d 1122, 1126 (9th Cir. 2000) (en banc).

### III. DISCUSSION

Defendants, two federal agencies and four federal employees, argue the complaint should be dismissed for five reasons: (1) Plaintiff's action is time barred by the statute of limitations; (2) the FDCPA excludes employees of the United States from coverage; (3) Plaintiff has not alleged that her debt is covered by the FDCPA; (4) Plaintiff's action is barred by the doctrine of claim preclusion; and (5) Plaintiff's complaint fails to state a claim.

**A.  Statute of Limitations**

Under the FDCPA, the statute of limitations for "[a]n action to enforce any liability created by this subchapter" is "one year from the date on which the violation occurs." 15 U.S.C.A. § 1692k(d). "[U]nder the FDCPA, the injury which forms the basis of the action is the filing of the underlying collection lawsuit." Lyons v. Michael & Assocs., 824 F.3d 1169, 1173 (9th Cir. 2016). The statute of limitations for FDCPA claims begins to run "on the filing of the collections complaint in the Municipal Court." Naas v. Stolman, 130 F.3d 892, 893 (9th Cir. 1997). However, the Ninth Circuit has modified this principle slightly, determining "the discovery rule applies" in FDCPA cases, meaning the "limitations period begins to run when

the plaintiff knows or has reason to know of the injury which is the basis of the action." Mangum v. Action Collection Serv., Inc., 575 F.3d 935, 940 (9th Cir. 2009). In other words, under the discovery rule, "[w]here a plaintiff suffers a legal injury, the limitations period does not begin to run until the plaintiff has discovered that his or her rights have been violated and the defendant is responsible for the injury." Sturgis v. Asset Acceptance, LLC, No. 3:15-CV-00122-AC, 2016 WL 223708, at *6 (D. Or. Jan. 19, 2016). Therefore, the FDCPA statute of limitations begins to run on a claim when a plaintiff discovers the alleged injury, defendant's collection action, which allegedly violated the FDCPA, not when a plaintiff realizes the injury violated the FDCPA. Id. But, if "a plaintiff relies on the discovery rule to avoid a statute-of-limitations defense, he or she bears the burden of pleading facts which justify application of the rule." Id.

Here, it is uncontested Plaintiff was on notice of the alleged violation, the reduction of her Social Security benefits, on January 3, 2014. ECF No. 1, at 59 (U.S. Department of Treasury letter notifying Plaintiff her Social Security benefit payments will be reduced to pay the debt "[b]eginning no sooner than 03/2014"). It is further uncontested Plaintiff discovered the alleged violation around March 3, 2014. ECF No. 1, at 55 (U.S. Department of Treasury letter notifying Plaintiff her Social Security benefits were reduced to pay her debt). Plaintiff's March 2014 discovery of the alleged violation is further evidenced by Plaintiff's complaint, which states, "March 5, 2014 . . . records show Plaintiff spoke with Defendant Lewis (Lovell), that Plaintiff was crying, visibly upset, about the $202.20 taken out of her March Social Security direct deposit." ECF No. 1, at 9. Thus, applying the discovery rule, Plaintiff *discovered* the injury no later than March 2014. At this point, the one-year statute of limitations began to run and in March of 2015, the one-year statute of limitations ran, ending the period in which Plaintiff could timely file her complaint. Plaintiff filed this lawsuit on November 14, 2018, over three years after the one-year statute of limitations ran. ECF No. 1.

In Plaintiff's opposition to Defendants' motion to dismiss, Plaintiff argues the statute of limitations has not lapsed because she did not know these actions violated the FDCPA at the time they occurred. ECF No. 15 at 2-3. This argument lacks merit. The statute of limitations begins to run when Plaintiff discovered the injury that allegedly violated the

8

FDCPA, not when Plaintiff learned the injury violated the FDCPA. See Mangum, 575 F.3d at 940. The focus is on the discovery of the injury, not the knowledge that the discovered injury violated the FDCPA. The statute of limitations begins to run at the moment the injury is discovered, whether or not a plaintiff knows at that time the injury violates the FDCPA. See Id.

Further, even if the statute allowed the Court to toll the limitations period to Plaintiff's previous case related to this debt collection, Bos v. United States Small Business Admin. et al., which the statute does not, Plaintiff's claims would still be barred. Plaintiff's previous case was initiated on March 1, 2016, a year after the statute of limitations under the FDCPA lapsed. See Bos v. United States Small Business Admin. et al., 2:15-cv-00017-JAM-CMK. For these reasons, this Court recommends dismissal because Plaintiff's claims under the FDCPA are barred by the one-year statute of limitations.

### B. Fair Debt Collection Practices Act

The FDCPA was enacted to protect consumers from "abusive debt collection practices by debt collectors." 15 U.S.C.A. § 1692(e). Under the FDCPA, "[a] debt collector may not engage in any conduct the natural consequence of which is to harass, oppress, or abuse any person in connection with the collection of a debt." 15 U.S.C.A. § 1692d. Additionally, the Act states, "[a] debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt." 15 U.S.C.A. § 1692e. Lastly, "[a] debt collector may not use unfair or unconscionable means to collect or attempt to collect any debt." 15 U.S.C.A. § 1692f.

#### 1. Federal Employees Exempt

The FDCPA excludes from the definition of "debt collector" any "officer or employee of the United States or any State to the extent that collecting or attempting to collect any debt is in the performance of his official duties." 15 U.S.C.A. § 1692a(6)(C). "This exemption applies only to an individual government official or employee who collects debts as part of his government employment responsibilities." Brannan v. United Student Aid Funds, Inc., 94 F.3d 1260, 1263 (9th Cir. 1996). "Federal agencies and instrumentalities . . . are . . . immune from suit." S. Delta Water Agency v. U.S., Dep't of Interior, Bureau of Reclamation,

767 F.2d 531, 536 (9th Cir. 1985). If a plaintiff sues a United States government agency, then the non-government actor "bears the burden of establishing that sovereign immunity has been waived," United States v. Deuerling, 210 F. Supp. 3d 717, 722 (W.D. Pa. 2016), noting "[o]nly Congress enjoys the power to waive the United States' sovereign immunity." Dunn & Black, P.S. v. United States, 492 F.3d 1084, 1090 (9th Cir. 2007). "[T]he FDCPA does not contain an unequivocal and express waiver of sovereign immunity." Wagstaff v. U.S. Dep't of Educ., 509 F.3d 661, 664 (5th Cir. 2007). Thus, a plaintiff cannot sue the United States, its agencies, or individual government employees acting in their official capacities for violations of the FDCPA. See Deuerling, 210 F. Supp. 3d at 723 (dismissing FDCPA claims against the United States Department of Education, the United States Department of Treasury, and the United States Department of Justice because of their status as United States government agencies).

Here, Plaintiff's claim fails because all Defendants are immune from suit under the FDCPA. First, Defendant SBA and Defendant U.S. Department of the Treasury Offset are both United States government agencies and therefore cannot be sued by a private individual without a waiver of their sovereign immunity. Congress has not waived sovereign immunity for either Defendant SBA or Defendant U.S. Department of the Treasury Offset; thus, the SBA and U.S. Department of the Treasury Offset are immune from suit and cannot be named Defendants in this action.

The remaining Defendants are all employees of the above listed U.S. government agencies, sued in their official capacities. See ECF No. 17, at 2 (Plaintiff, in referencing Defendants, states "Employees of the United States government in their official capacities . . . acted outside the law set by the FDCPA."). It appears these Defendants were acting as government employees responsible for collecting or attempting to collect Plaintiff's debt. Therefore, these individual Defendants are also immune from suit under the FDCPA. This Court recommends dismissal of Plaintiff's complaint because both the federal agency Defendants and the individual Defendants acting in their official capacities cannot be sued under the FDCPA.

///

### 2. Plaintiff's Debt is Not Covered

The FDCPA defines "debt" as "any obligation or alleged obligation of a consumer to pay money arising out of a transaction in which the money, property, insurance, or services which are the subject of the transaction are primarily for personal, family, or household purposes, whether or not such obligation has been reduced to judgment." 15 U.S.C.A. § 1692a(5). To allege a violation of the FDCPA, the plaintiff must first establish their debt is covered by the Act. Campbell v. Baldwin, 90 F. Supp. 2d 754, 757 (E.D. Tex. 2000). Classifying a loan is typically done by looking at the transaction as a whole, but more specifically, at "the purpose for which the credit was extended in order to determine whether [the] transaction was primarily consumer or commercial in nature." Bloom v. I.C. Sys., Inc., 972 F.2d 1067, 1068 (9th Cir. 1992) (quoting Tower v. Moss, 625 F.2d 1161, 1166 (5th Cir.1980)). Because the FDCPA is designed to protect consumers from abuse, "the Act applies to consumer debts and not business loans." Bloom, 972 F.2d at 1068.

Here, Plaintiff does not allege facts to support an FDCPA claim because Plaintiff failed to meet the threshold requirement of establishing her debt is covered by the FDCPA. This is likely because Plaintiff's debt is, in fact, not covered by the FDCPA as it is more akin to a small business loan than a personal loan. This is evidenced by Plaintiff's exhibits, which show the SBA administered the loan to "Tamara Lee Originals, Inc." (ECF No. 1, at 33). Plaintiff's exhibits demonstrate that "Tamara Lee Originals, Inc." is a business Plaintiff established "to make extra money" on the internet and where "new clients reach [her] by email." Id. at 103. As noted above, the FDCPA is not applicable to business loans. Because Plaintiff does not allege any facts demonstrating the SBA loan was primarily for personal, family, or household uses, Plaintiff has failed to make the prima facia showing required by the FDCPA. Additionally, it is reasonable to infer, based on the complaint and attached exhibits, Plaintiff took out the loan only for commercial business purposes to fund "Tammy Lee Originals, Inc." and for that reason, the FDCPA does not apply. Accordingly, this Court recommends Plaintiff's complaint be dismissed.

///

### C. Claim Preclusion

Claim preclusion forecloses "successive litigation of the very same claim, whether or not relitigation of the claim raises the same issues as the earlier suit." Id. Stated another way, "[c]laim preclusion . . . bars any subsequent suit on claims that were raised or could have been raised in a prior action." Cell Therapeutics, Inc. v. Lash Group, Inc., 586 F.3d 1204, 1212 (9th Cir. 2009). "Newly articulated claims based on the same nucleus of facts are also subject to a res judicata finding if the claims could have been brought in the earlier action." Stewart v. U.S. Bancorp, 297 F.3d 953, 956 (9th Cir. 2002). Thus, claim preclusion prevents a plaintiff from later presenting any legal theories arising from the "same transactional nucleus of facts." Hells Canyon Preservation Council v. U.S. Forest Service, 403 F.3d 683, 686 n.2 (9th Cir. 2005).

The party seeking to apply claim preclusion bears the burden of establishing the following: (1) an identity of claims; (2) the existence of a final judgment on the merits; and (3) identity or privity of the parties. See Cell Therapeutics, 586 F.3d at 1212; see also Headwaters, Inc. v. U.S. Forest Service, 399 F.3d 1047, 1052 (9th Cir. 2005). Determining whether there is an identity of claims involves consideration of four factors: (1) whether the two suits arise out of the same transactional nucleus of facts; (2) whether rights or interests established in the prior judgment would be destroyed or impaired by prosecution of the second action; (3) whether the two suits involve infringement of the same right; and (4) whether substantially the same evidence is presented in the two actions. See ProShipLine, Inc. v. Aspen Infrastructure Ltd., 609 F.3d 960, 968 (9th Cir. 2010). Reliance on the first factor is especially appropriate because the factor is "outcome determinative." Id. (quoting Mpoyo v. Litton Electro-Optical Sys., 430 F.3d 985, 987 (9th Cir. 2005)).

As to privity of the parties, privity is "a legal conclusion designating a person so identified in interest with a party to former litigation that he represents precisely the same right in respect to the subject matter involved." Kourtis v. Cameron, 419 F.3d 989, 996 (9th Cir. 2005), abrogated by Taylor v. Sturgell, 553 U.S. 880, 128 S. Ct. 2161, 171 L. Ed. 2d 155 (2008) (quoting United States v. Schimmels, 127 F.3d 875, 881 (9th Cir.1997)). "A person

technically not a party to the prior action may be bound by the prior decision if his interests are so similar to a party's that that party was his 'virtual representative' in the prior action." United States v. Geophysical Corp. of Alaska, 732 F.2d 693, 697 (9th Cir. 1984). The Ninth Circuit has held that "when two parties are so closely aligned in interest that one is the virtual representative of the other, a claim by or against one will serve to bar the same claim by or against the other." [4] Irwin v. Mascott, 370 F.3d 924, 929 (9th Cir. 2004). Further, "[c]ourts have found privity exists between employers and their employees when the claim[s] asserted are based upon the employee's actions in the course and scope of his employment." Hanna v. Mariposa Cty. Sheriff Dep't, No. 1:12-CV-00501-AWI, 2014 WL 2547836, at *5 (E.D. Cal. June 5, 2014), report and recommendation adopted, No. 1:12-CV-00501-AWI-SA, 2014 WL 3615779 (E.D. Cal. July 22, 2014). In Irwin, the Ninth Circuit concluded "a corporation was the virtual representative of its senior corporate officer" because "there was no assertion that [the officer's] interests diverged from the corporation's." Kourtis, 419 F.3d at 996-97 (internal quotation marks omitted).

Additionally, privity between parties exists "when there is sufficient commonality of interest." Robinson v. Brown, No. 2:12-CV-1776 MCE DAD, 2014 WL 1779460, at *7 (E.D. Cal. May 5, 2014). In Scott v. Kuhlmann, different defendants were named in the two actions, but all were "employees of the FCC who participated in the inquiry" at issue in the suit. 746 F.2d 1377, 1378 (9th Cir. 1984). In Scott, the Ninth Circuit held that even if two actions do not have the exact same defendants named, privity will exist "between officers of the same government so that a judgment in a suit between a party and a representative of the United States is *res judicata* in relitigation of the same issue between that party and another officer of the government." Id.

---

[4] In Taylor v. Sturgell, the Supreme Court stated "[w]e disapprove the doctrine of preclusion by 'virtual representation.'" 553 U.S. 880, 885 (2008). However, the Supreme Court recognizes that "references to 'virtual representation' have proliferated in the lower courts," and that this "decision is unlikely to occasion any great shift in actual practice." Id. at 904. The Supreme Court adds, "[m]any opinions use the term 'virtual representation' in reaching results at least arguably defensible on established grounds" and in "these cases, dropping the 'virtual representation' label would lead to clearer analysis with little, if any, change in outcomes." Id. For that reason, though the term "virtual representation" was disapproved of by the Supreme Court, the legal framework surrounding it in the Ninth Circuit has remained intact.

Based on the analysis below, this Court recommends Plaintiff's claim be dismissed because it is barred by the doctrine of claim preclusion. To begin, the Court notes, and takes judicial notice of, Plaintiff's previous lawsuit related to this exact debt collection. Plaintiff filed this previous lawsuit in 2015 alleging defendants violated the Privacy Act. <u>Bos v. United States Small Business Admin. et al.</u>, 2:15-cv-00017-JAM-CMK. This prior lawsuit forms the basis for the res judicata Defense raised by the Defendants and discussed below.

1. <u>Identity of Claims</u>

First, Plaintiff's current suit is based on the same incident as the prior 2015 suit. The complaint contains the exact same factual allegations and differs only in the legal theory— now presented as alleged violations of the FDCPA. The new FDCPA legal theory arises from the "same transactional nucleus of facts," related to the monthly garnishment of Social Security benefits to repay Plaintiff's delinquent SBA micro-loan and the various conversations Plaintiff had with Defendants regarding the loan payments. The two lawsuits are based on substantially the same evidence, as the two complaints are nearly identical in detailing the conversations and actions taken by Defendants to collect the loan payments. By not bringing an FDCPA action in the 2015 lawsuit, Plaintiff effectively waived her right to bring that claim in the future as there is no question this claim could have been brought in the 2015 litigation. See <u>Hells Canyon Preservation Council v. U.S. Forest Service</u>, 403 F.3d 683, 686 n.2 (9th Cir. 2005) (holding claim preclusion prevents a plaintiff from later presenting any legal theories arising from the "same transactional nucleus of facts.").

2. <u>Privity of the Parties</u>

Second, Plaintiff has essentially named the same parties in both lawsuits, with the addition of the U.S. Department of the Treasury Offset. Although the addition of a new party appears to disrupt the "same parties in both actions" requirement, "[t]he doctrine of privity extends the conclusive effect of a judgment to nonparties who are in privity with parties to an earlier action." <u>United States v. ITT Rayonier, Inc.</u>, 627 F.2d 996, 1003 (9th Cir. 1980). Here, the presence in the first lawsuit of Defendant Tammy Grissom, an employee of the U.S. Department of the Treasury Offset, allows for a privity relationship between the two

Defendants. Under an employer-employee relationship, both Defendants share the same interest and represent the same right in respect to the issue. See Hanna, 2014 WL 2547836, at *5. Defendant Grissom adequately represented the identical interests of her employer in the first action as an employee of the U.S. Department of the Treasury Offset, acting in her official capacity. Similarly, because privity between officers of the same government acting in their official capacity exists, it is reasonable to infer and likely necessarily follows, a privity relationship between an officer acting in their official capacity and the government agency they represent exists as well. See Scott, 746 F.2d at 1378. Therefore, under both theories, Defendant Tammy Grissom and her employer, Defendant U.S. Department of the Treasury Offset, maintain a privity relationship sufficient to satisfy the "same parties" requirement for claim preclusion.

### 3. Final Judgement on the Merits

Third, the 2015 lawsuit ended with a final judgment on the merits. The 2015 case was dismissed with prejudice, pursuant to Fed. R. Civ. P. 12(b)(6), for failure to state a claim upon which relief may be granted. A case dismissed "with prejudice is an acceptable form of shorthand for an adjudication upon the merits." Semtek Int'l Inc. v. Lockheed Martin Corp., 531 U.S. 497, 505 (2001) (internal quotation marks omitted). Therefore, because all three elements are met, Plaintiff's FDCPA claim is barred by the doctrine of claim preclusion and should be dismissed.

### D. Rule 8

The Federal Rules of Civil Procedure require that complaints contain a ". . . short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). This means that claims must be stated simply, concisely, and directly. See McHenry v. Renne, 84 F.3d 1172, 1177 (9th Cir. 1996) (referring to Fed. R. Civ. P. 8(e)(1)). These rules are satisfied if the complaint gives the defendant fair notice of the plaintiff's claim and the grounds upon which it rests. See Kimes v. Stone, 84 F.3d 1121, 1129 (9th Cir. 1996). Because plaintiff must allege with at least some degree of particularity overt acts by specific defendants which support the claims, vague and conclusory allegations fail to satisfy this standard.

If a plaintiff appears pro se in the action, "the court must construe the pleadings liberally and must afford [the] plaintiff the benefit of any doubt." Betancourt v. New Century Mortg. Corp., No. 116CV01855AWISKO, 2017 WL 2618749, at *2 (E.D. Cal. June 16, 2017) (quoting Karim-Panahi v. L.A. Police Dep't, 839 F.2d 621, 623 (9th Cir. 1988)). "Presumably unskilled in the law, the pro se litigant is far more prone to make errors in pleading than the person who benefits from the representation of counsel." Crowley v. Bannister, 734 F.3d 967, 978 (9th Cir. 2013). Accordingly, "[a] pro se litigant must be given leave to amend his or her complaint, and some notice of its deficiencies, unless it is absolutely clear that the deficiencies of the complaint could not be cured by amendment." Cato v. United States, 70 F.3d 1103, 1106 (9th Cir. 1995). "However, if, after careful consideration, it is clear that a complaint cannot be cured by amendment, the [c]ourt may dismiss without leave to amend." Melger v. Obama, No. 2:16-cv-1527 AC P, 2017 WL 1213363, at *2 (E.D. Cal. Mar. 31, 2017).

A "dismissal for a violation under Rule 8(a)(2), is usually confined to instances in which the complaint is so 'verbose, confused and redundant that its true substance, if any, is well disguised." Hearns v. San Bernardino Police Dep't, 530 F.3d 1124, 1131 (9th Cir. 2008) (internal quotation marks omitted). "Verbosity or length is not by itself a basis for dismissing a complaint based on Rule 8(a)." Hearns, 530 F.3d at 1131. A lengthy or overly detailed complaint can still comply with Rule 8 if it "is logically organized, divided into a description of the parties, a chronological factual background, and a presentation of enumerated legal claims, each of which lists the liable Defendants and legal basis therefor." Id. at 1132.

Here, Defendants argue Plaintiff's complaint is "a 26-page narrative concerning her interaction with the SBA and the Department of Treasury about her micro loan." ECF No. 11-1 at 7. Defendants assert such a narrative fails to meet the pleading requirements under Rule 8 as it "fails to sufficiently tie a specific violation of the FDCPA to any of the named Defendants." Id. This argument is largely unpersuasive. As a pro se litigant, Plaintiff's pleadings are liberally construed, and Plaintiff is afforded the benefit of any doubt at this stage of the proceedings. Liberally construing Plaintiff's complaint, Plaintiff alleges sufficient facts as to each named Defendant, connecting their actions to alleged violations of the FDCPA. Though it appears

Plaintiff simply copied and pasted the language of the FDCPA into the complaint, she does, on numerous occasions, connect the alleged actions of Defendants to portions of the copied statute. This is sufficient to satisfy the liberal pleading standard for a pro se litigant under Rule 8.

Further, as a general principle, a complaint is only dismissed under Rule 8(a)(2) when the complaint is so "verbose, confused and redundant that its true substance, if any, is well disguised." See Hearns, 530 F.3d at 1131. Here, Plaintiff's complaint, although lengthy, is not so "verbose, confused and redundant" that the legal basis of Plaintiff's allegations is "disguised." Id. Thus, both the liberal pleading standard afforded to pro se litigants, and the general principle that only sufficiently "verbose, confused, and redundant" complaints should be dismissed, support the determination that Plaintiff's complaint satisfies Rule 8. For that reason, the Court does not recommend dismissal for failure to comply with the Rule 8 pleading requirements.

### IV. CONCLUSION

Based on the foregoing, the undersigned recommends Defendants' motion to dismiss (ECF No. 11) be granted and that this action be dismissed without leave to amend and with prejudice.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(1). Within 14 days after being served with these findings and recommendations, any party may file written objections with the court. Responses to objections shall be filed within 14 days after service of objections. Failure to file objections within the specified time may waive the right to appeal. See Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

Dated: July 9, 2019

DENNIS M. COTA
UNITED STATES MAGISTRATE JUDGE